## COUNTY OF BERKSHIRE, SEPTEMBER TERM, 1806, AT LENOX.

———◆———

PRESENT:

Hon. THEOPHILUS PARSONS, Chief Justice.
Hon. THEODORE SEDGWICK, ⎫
Hon. SAMUEL SEWALL,     ⎬ Justices.

— ◆ —

Thomas Pearsall & Al. *versus* Josiah Dwight & Ai

Statute of limitations of the state of *New York* cannot be pleaded in bar of an action commenced here by inhabitants of *New York*, upon a promissory note executed there by the defendants, citizens of this state.

Assumpsit on a promissory note. As the pleadings in this case are fully stated in the opinion of the Court as delivered by the Chief Justice, for the sake of brevity they are here omitted. The question on the pleadings was, whether, to an action in this commonwealth on a promissory note made in *New York*, and payable there, the plaintiffs being inhabitants of that state, and the defendants inhabitants of this commonwealth, a plea of the statute of limitations of the state of *New York* was a good bar.

*Ashman*, in support of the plea. The laws of the place where a legal contract is made are to govern, except where the parties at the time had a view to a different state or country. Lord *Mansfield*

84

lays this down as an established rule, in *Robinson* vs. *Bland.* (1) This principle, it is believed, has been uniformly adopted in our own courts.

*In the present case, the contract was made in the state [ *85 ] of *New York*, and nothing appears, from the note or the pleadings, that the parties had a view to any other country, where the contract was to be performed.

The authorities cited prove that what would have been a defence in *New York* will, of course, be a defence here ; particularly *Inglis & Al.* vs. *Usherwood*, and *Melan* vs. *The Duke de Fitzjames.*

By our statute against gaming, *any* person who loses money, &c., to *any* person, and pays the same, may within three months bring an action, and recover back the money. Shall a person losing money in *England* maintain such an action here? Would it not be competent for the defendant in such action to show in our courts that, by the law of the place where the transaction took place, he had a right to retain the money?

So, our statute against usury is as comprehensive as this of limitations. By the laws of *New York*, seven per cent. is the legal rate of interest. Shall a note given in *New York*, bearing interest at seven per cent., be avoided here? Certainly not; and the reason is, that the contract shall be governed by the laws of the country where it is made. A great variety of cases might be put, where, unless a defence of this sort were allowed, the defendant might be subjected to the payment of damages for an act which it was his indispensable duty to perform.

*J. C. Williams*, on the other side. The statute of limitations has generally been considered as operating only to destroy the remedy, and not to affect the merits. (2)

There is a great difference between resorting to the *lex loci*, to carry into effect a *bonâ fide* contract, according to the legal intentions of the parties, and resorting to it to destroy such contract by admitting, from analogy, the effect of a plea manifestly against good conscience.

The judges in *England*, from 32 *Hen.* 8, when the first statute of limitations was passed, to the present day, have considered these statutes as against the principles of common right, *and have uniformly adhered to the *letter* in the con- [ *86 ] struction of them. (3)

(1) *W. Black.* 258. — See, also, *Holman & Al.* vs. *Johnson, Cowp.* 343. — *Mostyn* vs. *Febrigas, Ibid.* 175. — *Smith & Al.* vs. *Buchanan & Al.* 1 *East*, 6. — *Inglis & Al.* vs *Usherwood, Ibid.* 515. — *Melan* vs. *The Duke de Fitzjames*, 1 *Bos. & Pul.* 138. — *Johnson & Al.* vs. *Smith*, 2 *Burr.* 950.
(2) *Nash* vs. *Tupper*, 1 *New York Term Rep.* 402.
(3) 4 *Co.* 8, *Bevil's* case. — *Ewer* vs. *Jones*, 2 Lord *Raym.* 934. — 2 *Vent.* 345. -

With regard to the *lex loci* where the contract was made, it is conceded, that whatever would be a good defence by the law of the place on the real merits, would be, generally, a good defence at the place where the action is brought. But it does not always govern in suits brought in *England*. In 2 *Burr.* 1084, *Wilmot*, J., says, " The law of the place where the thing happens does not always prevail ; " and he instances the case of a contract made with a courtesan, for the price of her prostitution. He adds, " If a man *originally* appeals to the law of *England* for redress, he must take his redress according to that law to which he has appealed for such redress."

In an action some time since pending in this Court, by the er dorsee of a promissory note, given in *Connecticut*, and payable to A, or order, *E. Williams*, for the defendant, objected that, by the law of *Connecticut*, an action cannot be maintained in the name of the endorsee. The Court overruled the objection, and the plaintiff had judgment.

The same determination has been made in the Supreme Court of *New York*, in the case of *Lodge* vs. *Phelps*, cited in the case of *Nash* vs. *Tupper*, (4) wherein the Court said that " the principle of the *lex loci* shall not affect the form of action, but shall have reference only to the nature and construction of the contract and its legal effects, not to the mode of enforcing it."

*Ashman*, in reply. That the plea of the statute of limitations is not to be favored, is frequently said ; but Lord *Holt*, a very able and upright judge, and the other judges of his court, thought otherwise, " because the security of all men depended upon it." (5) Lord *Mansfield* says, the plea is to be treated liberally. And the opposition to the statute is more frequently urged in addresses to the jury than in arguments to the court.

[ *87 ]     *The legislature of this state, and of almost all countries where there is a regular administration of justice, have supposed it to be right and equitable that there should be a limited time, beyond which actions should not be commenced ; and every one knows that there are cases in which the plea is perfectly honest and conscientious, although the facts, making it so, cannot appear in the plea itself, which, on the face of it, is a mere legal bar.

The statute of limitations may be given in evidence under the

Lord *Hollis's* case, 2 Lord *Raym.* 1204. — *Strithorst* vs. *Graeme*, 3 *Wils.* 145. — 2 *W. Black.* 723, S. C. — *Trueman* vs. *Fenton*, *Cowp.* 548. — *Quantock & Al.* vs. *England*, 5 *Burr.* 2630. — *Willet* vs. *Allerton*, 1 *W. Black.* 35. — *Cox* vs. *Roll*, 2 *Wils.* 256
(4) 1 *New York Term Rep.* 412.
(5) *Green* vs. *Rivett*, 2 *Salk.* 421. — 7 *Mod.* 12, S. C.

plea of *Nil debet.* (6)   (*Parsons*, C. J., said this was merely a *dictum* of Lord *Holt*, and had been since overruled.)

The opinion of the Court was afterwards delivered by

PARSONS, C. J.   From the record in this cause, the declaration appears to be on a negotiable cash note, payable by the defendants to the plaintiffs, or their order, on demand.   To this declaration there is a plea in bar, alleging that the plaintiffs long before, at the time, and ever since, the note was executed, were inhabitants of the state of *New York;* that the note was there made; that before it was made, and six years before this action was commenced, there was a statute of that state still in force, which, among other things, limited the time of suing an action of this description to six years next after the cause of action accrued, which part of the statute is particularly pleaded with a *profert* of the exemplification of the whole statute, and there is the averment necessary to bring this action within that statute.

The plaintiffs, in the replication, neither pray oyer of the exemplification of that statute, nor particularly plead any exceptions made in it, but confess and would avoid the bar, by alleging that the defendants were, during all the time, inhabitants of this state.

The defendants, in their rejoinder, confess and would avoid the replication, by averring that, since the making of the note, and more than six years before this action was commenced, the defendants went and returned to the state of *New York*, and were there ten days, with the knowledge of the plaintiffs.

* To this rejoinder the plaintiffs demur generally, and  [ * 88 ] the defendants join in demurrer.   Whether this rejoinder be good, is the issue in law immediately before the Court.

If the matters alleged in the replication are sufficient to avoid the bar, the rejoinder must be bad, because it neither traverses those matters, nor shows any provision of the statute of *New York*, by which the effect of the replication is avoided by the collateral facts pleaded in the rejoinder.

For the same reason, if the matters alleged in the bar are suffi cient in law, the replication must be bad, for the plaintiffs do not plead any exception in that statute, by which the bar, when confessed, may be avoided.   Notwithstanding the *profert* of the exemplification of that statute, yet, if it contained any exception on which the plaintiffs intended to rely, they ought either to have prayed oyer, and spread the whole statute upon the record, or to have particularly pleaded such exception, in their replication, and then to have made the allegation necessary to bring their case within

(6) 1 *Salk* 278 — 1 Lord *Raym.* 153.

it. This reasoning is grounded on the opinion that, if that statute can avail in this Court, when pleaded in bar, the bar cannot be avoided but by virtue of some provision of the same statute. As the pleadings now are, the Court cannot take notice of any parts of that statute but of those which are particularly shown in the bar.

Although the rejoinder be bad, yet if the replication is also bad, the defendants must have judgment, if the bar be good.

Thence the great question in the cause is whether, to an action commenced in a court in this state by the plaintiffs, inhabitants of *New York*, on this note there executed by the defendants, inhabitants of this state, the statute of limitations of the state of *New York* can be pleaded in bar.

That the statute of another state cannot, *proprio vigore*, have the force of law in this state is very clear, and its effect in this Court must depend on the laws of the commonwealth.

It is a general rule, that personal contracts entered into, and to be performed, in any one state, and which are there valid, are to be considered as valid in every other state.

[ * 89 ]     * This rule is founded on the tacit consent of civilized nations, arising from its general utility, and seems to be a part of the law of nations adopted by the common law.

To give effect to contracts of this description is an act of comity due, from the courts of the state in which such contracts may be sued, to the state in which they may be made.

This rule is subject to two important exceptions. First, that neither the state in whose court the contract is put in suit, nor its citizens, may suffer any inconvenience by giving the contract effect; and, secondly, that the consideration of the contract be not immoral, and the giving it effect will not have a bad tendency. Under these exceptions, the cases which do not come within the rule may be classed.

The contract on which this action is founded is clearly within the rule. It was made in *New York*, and might there be performed. The plaintiffs, when it was made, were inhabitants of that state, and so are the defendants to be considered in this cause, by going and making the contract there. The contract, when made, was valid by the laws of *New York*: the giving it effect here cannot be injurious to the commonwealth, or its citizens, nor have an evil tendency: and the consideration is not immoral. The Court are therefore obliged, by the laws of the commonwealth, to con sider it as a valid contract, according to the true construction of the rule.

The party claiming the benefit of the note, in this case, has sued it originally in a court in this state; the law of the state of *Neu*

*York* will therefore be adopted by the Court, in deciding on the nature, validity, and construction, of this contract. This we are obliged to do by our own laws. So far the obligation of comity extends, but it extends no farther. The form of the action, the course of judicial proceedings, and the time when the action may be commenced, must be directed, exclusively, by the laws of this commonwealth.

These are matters not relating to the validity of the contract; and to permit the laws of another state to control the Court, in its proceedings concerning them, would intrench upon * the authority of our own laws unnecessarily, and for no [ * **90** ] principle of *common utility.* Cases may also be supposed in which this permission might be injurious to our citizens. If the state in which the contract was made had no statute of limitations, then, by the *lex loci,* the action might there be commenced at any time, and if the plaintiff should afterwards remove to this state, and commence his action in our Court, the defendant would be deprived of the benefit of the limitations here in force. That the form of the action must be conformable to our laws, the case of *Folliot* vs. *Ogden* (7) is an authority. In giving the opinion of the court, Lord *Loughborough* considers it as law that, when a bond made in a foreign state, by whose laws it is assignable, is sued at law in *England,* the suit must be according to the laws of *England,* in the name of the obligee, and not of the assignee, although it be for his use, because, there, bonds are not assignable *at law.* As to the time when the suit may be commenced, no authorities in point have been cited from our books, nor do I recollect any ; (8) but the subject has been considered by foreign jurists of great merit.

In the Prelections of *Huber,* under the title *De Conflictu Legum,* (9) he states a case, in which an action was commenced in a court of *Friesland,* by a *Hollander* against a *Frieslander,* on a contract made in *Holland,* and the limitation in force in *Friesland* was pleaded against the action. The *Hollander* contended that it could not be pleaded against him, to that contract, which was to be decided by the *lex loci,* or the laws of *Holland.* But the judgment was against the *Hollander.* After mentioning another case upon execution, in which the *lex loci* was not allowed to govern, the author adds — " *Hæc est ratio, quod prescriptio et executio non pertinent ad valorem contractûs, sed* ad tempus *et modum actionis instituen-*

---

(7) 1 *H. Black.* 135.
(8) But see the case of *Duplein* vs. *De Rouen,* in 2 *Vern.* 540, in which the statute of limitations of *England* was allowed to be pleaded, where the contract was made abroad between two foreigners. — C. J.
(9) Vol ii. lib. 1.

*dæ, quæ, per se, quasi contractum separatumque negotium constitit, adeoque receptum est optima ratione, ut in ordinandis judiciis, loci consuetudo ubi agitur, etsi de negotio alibi celebrato, spectetur.*"
[ * 91 ]      * It is therefore the opinion of the Court that the plea in bar is not good.

Consequently the ·judgment on the demurrer must be, that it appears to the Court that the rejoinder is bad and insufficient in law, &c. (*a*)

(*a*) *M'Clung* vs. *Silliman*, 3 *Peters*, 270. — *Wood* vs. *Malin*, 5 *Halst.* 230. — *Le Roy & Al.* vs. *Crowningshield*, 2 *Mason*, 151. — *Hinckley* vs. *Mareau*, 3 *Mason*, 88. — *Van Reimsdyk* vs. *Kane*, 1 *Gall.* 371. — *Trasher* vs. *Everhart*, 3 *G. & J.* 234. — *Paxton* vs. *Liffart*, 2 *Rawle*, 69.