That the laws of the State where a contract was made shall be resorted to for its exposition, but the laws of the country where a remedy is sought shall be applied to it when it is enforced, seems to be a principle well established in (329) England, and has been frequently recognized in the courts of the United States. The form of action, the process, and the time within which it may be commenced must necessarily be gathered from the law of the State where the suit is brought. Thus where a bond is given in another State, where it is assignable, and a suit is brought in England, it must be in the name of the obligee, because there it is not assignable by law. Folliot v. Ogden, 1 H. Bl., 135. So where a contract was made abroad, and sued on in England, the statute of limitations of that country was allowed to be pleaded (2 Ves., 340), and this rule has been adopted and followed in various State courts: *Page 211 2 Mass. 90; Nash v. Tupper, 1 Cain, 402; Ruggles v. Keeler, 3 Johns., 263. So that if there were before us evidence that when this contract was entered into the laws of Virginia gave the creditor a right to imprison his debtor on a ca. sa., and that he made his engagement with him on the faith and expectation of a power in our forum, the only inquiry is, Does the law of this State give him the same right? There is a case in one of the British reporters in conflict with this principle, but the decision was not unanimous, and the authority of it has since been questioned. The case was where a defendant entered into an instrument in France, by which his property only, and not his person, was liable according to the law of France. The court discharged him on a common appearance. Melan v. Duke ofFitzjames, 1 Bos. and Pull., 138; but see 2 East, 455; 2 Johns., 158. If that decision is correct, it would follow from it that if the defendant had been amenable in his body by the law of France, though not so by the law of England, he must have been held to special bail or have gone to prison.
This brings me to the act of 1822, for the relief of debtors, upon the true construction of which this case depends; and considering that the question now first arises, I think we ought to construe it as not to make sheriffs liable for (330) acts of inadvertence which they could not readily guard against, and where there was no record or process in their possession to apprise them that the defendant was not entitled to the benefit of the act. The act extends the benefit to every debtor taken upon a ca. sa. for any debt contracted after 1 May, 1823. The only information the sheriff could derive from the writ of execution in this case was that it issued 17 June, 1826, about three years after the time when contracts entered into were privileged by the act; that the recovery was of a debt, but whether founded on a judgment or not, the execution does not disclose. It does, then, appear to me reasonable, that if presumption was to be made either way, it should be in favor of the defendant, since the sheriff could not be ignorant that from the dispatch with which business was done in that court there had been ample time to contract a debt since May, 1823, and to obtain judgment and execution for the nonpayment. The execution, too, shows that it was executed by the deputy, who may have lived in the country and in the neighborhood of the defendant. The consequence of keeping him in custody until the deputy came to town to ascertain when the debt was contracted would, in a case where the debt was contracted since May, 1823, and the bond was tendered, have made the sheriff liable to an *Page 212 
action of false imprisonment. That consequence, to be sure, would not have resulted in this case; but the rule, if established, must be general in its application. I therefore think it would be a severe rule to impose upon the sheriff the duty of ascertaining the time when a debt was contracted, considering how easy it is for the plaintiff to have it indorsed on the execution, or to give notice to the sheriff; and the case reminds me of the excellent remark of Lord Coke, "and forasmuch as escapes (331) are so penal to sheriffs, the judges of the law have always made such favorable construction as the law will suffer in favor of sheriffs; and to the intent that every one bear his own burthen, the judges shall never adjudge one to make an escape by a strict construction." Boynton's case, 3 Rep., 44. I think the judgment should be affirmed.
PER CURIAM. Judgment affirmed.