Hon. PIERRE ADOLPHE ROST,
Hon. THOMAS SLIDELL,      } *Associate Justices.*
Hon. WILLIAM DUNBAR,

JOHN BACON et al. Trustees, &c., *v.* DAHLGREEN AND WIFE et al.

A judgment, pending an appeal, will not sustain a plea of *res judicata.*

The following was the form of the note on which defendants were sued: "Natchez, January 27, 1839. On the first of March after date, we, or either of us, promise to pay the president, directors and company of the Planters' Bank of the State of Mississippi, for value received, $63,945, payable and negotiable at the Planters' Bank of the State of Mississippi, at Natchez. MARY M. ELLIS, administratrix of T. G. Ellis, deceased; JOHN ROUTH, ELIAS OGDEN." *Held:* Under our laws, an instrument of this kind would be prescribed by the lapse of ten years from its maturity; and this prescription will be applied to contracts made out of the State, when sought to be enforced in our courts.

The prescription of the forum or place where the remedy is sought, must govern in all suits for the collection of debts. But this rule does not conflict with the well recognized doctrine, that a title to movable property complete in the party, acquired by prescription resulting from possession, or otherwise, will enable him to recover the same, in a State other than that in which the right of ownership has been thus acquired.

A surety on a note, when sued in Louisiana, cannot defeat the action by showing that the principal debtor had sustained a plea of the statute of limitations, to an action brought on the same note in Mississippi.

Where the note sued on was made in the State of Mississippi, and payable there, the obligations created by it must be tested by the laws of that State; and whatever acts of the parties which operate an extinguishment of the contract there, will undoubtedly prevent a recovery elsewhere.

An agreement to give time to the principal, which will discharge the sureties, under the laws of Mississippi, must be a positive and binding agreement, with the principal, for a definite time, based upon a valuable consideration, sufficient to tie up and restrain the creditor during the time for which the indulgence is given; and the consideration must be such that it can be enforced in a court of justice.

It is the intention of the parties to an instrument which renders it negotiable, if expressed in terms which may have that effect, and any terms expressing the intent will render the bill or note negotiable. *Preston*, J., dissenting.

The note sued on, although not payable to order or bearer, is negotiable, under the laws of Mississippi, and the prescription of five years is a bar to an action brought on it in this State. *Preston*. J., dissenting.

Where the principal debtor is discharged the surety is also discharged. *Preston*, J., dissenting.

APPEAL from the District Court of the Parish of Tensas, *J. N. T. Richardson*, J.

*Stacy* and *Sparrow*, for plaintiffs. This question has been settled against the defendant, by the Supreme Court of the United States in the cases of the *Planters' Bank* v. *Sharp et al* and *Baldwin et al.* v. *Payne et al.* 6 Howard's Rep. 301 to 344. The doctrine established by those decisions has been since adopted and followed by the High Court of Errors and Appeals of the State of Mississippi. 9 Smedes and Marshall's Rep. 394; 10 Ib. 434; 11 Ib. 573; and is embodied in, and constitutes a part of the jurisprudence of that State.

As no evidence has been introduced in support of this objection, nothing is necessary to be said upon it.

The obligation is not payable to order or bearer, and not negotiable by the commercial law, or the laws of Louisiana. We suppose, that after examining the decisions reported in 3 Ann. 220; 4 Ann. 234 and 127, and arts. 3505 and 3508 of the Civil Code, the most sceptical will admit, that the prescription of ten, and not five years, or the prescription of six years, in Mississippi, applies to the obligation sued on.

We have examined, and answered, as we hope, successfully, all the defences pleaded by the defendant in the district court. He, however, attempts to show, in the argument of the case, that the plaintiffs are not entitled to recover, because they have given time to the principal debtor for the payment of the debt, without the consent of the sureties. To this the plaintiffs reply, that no such objection has been made, or defence filed; which, if the party possessed, he was bound to plead specially by way of exception, in order to avail himself of it. This is the established and universal rule of practice. Code of Practice, arts. 345, 346. And a judgment is illegal, based on an exception not pleaded. 10 L. R. 169. Peremptory exceptions must be specially pleaded. 3 R. R. 360 and 440. An exception, that the party has been released by the granting of an extension of time given, must be specially pleaded in the lower court, or it will not be noticed in the Supreme Court. If not made, it is presumed to have been waived. *Gas Bank* v. *Hudson*, 5 R. R. 486. And this exception, to be valid and tenable, must state that the extension of time was given without the consent of the defendant. *Gordon* v. *Dreux et al.*, 6 R. R. 406. *Green* v. *Brandon*, 1 Walker's Miss. Rep. 372. No such exception having been filed, or notified to plaintiffs' by the defendant, he cannot take the plaintiffs by surprise, by setting it up verbally.

But, if the defence had been regularly made, it would not have released the defendant. The obligation sued on, was both executed and made payable in Mississippi. It was essentially a Mississippi contract in everything relating to it, and must, as to everything, except prescription and as to remedies for enforcing it, be governed exclusively by the laws of that State. Story's Conflict of Laws, No. 331, 332, 340, 342.

Now, notwithstanding the decisions of this honorable court in the cases of *Morton* v. *Halsted*, 1 Ann. 192. and *Adlé* v. *Metoyer*, Ib. 259, which were based upon our Civil Code, it is certain, that under the jurisprudence of the common law, in order that the giving of time by the creditor to the principal debtor, without the consent of the surety, should operate a release of the latter; it is necessary that there should be a consideration given, paid, or promised, for the extension. If given without, the agreement to give time is *nudum pactum*, and the surety is not released. This consideration may be of various descriptions, by changing the debt; by taking further collateral security; by receiving a part of the debt in cash, or by stipulating, that a consideration or bonus should be paid for it, &c. But, to have the effect contended for, it is necessary that there should be a valuable consideration. It is so laid down by all the common law writers on the subject. 3 Kent's Com. 111, 112. Bailey on Bills, 360.

*Planters' Bank* v. *Sellman,* 2 Gill and Johns. 230, which is a case precisely in point. Story on Promissory Notes, Nos. 412 to 422, who decides that a party bound *in solido,* although *inter se* he may be a surety, will not be discharged by any agreement to give time to one of the other parties. The authorities are reviewed, and the same doctrine sustained by the Supreme Court of the United States in the case of *Lemore* v. *Powell,* 12 Wheaton's Rep. 555. The High Court of Errors and Appeals of Mississippi, from the date of its organization to the present time, presents an unbroken chain of decisions establishing and confirming the same doctrine in its fullest extent. 4 Howard's Miss. Rep. 690. 5 Ib. 633. 3 S. and M. R. 647. 7 Ib. 522. 9 Ib. 474. 10 Ib. 344. 12 Ib. 535, and the authorities cited in said decisions. To produce a release of the security four things must concur: 1. A promise to indulge. 2. That promise to indulge, must be definite as to time. 3. "A consideration, for without it, a promise to indulge is not binding." 4. That the surety has not assented. "There must be some arrangement or dealing between the principal debtor and creditor, which operates as a fraud upon the surety." A mere consent to delay payment, cannot be so considered. 4 H›ward's Rep. 693.

Now, what are the facts of the case before the court? *Mrs. Ellis* was personally liable for the payment of the note; *Dahlgreen,* by marrying her, became, under the common law, also personally bound for it, and so expresses himself in his letter, dated the 29th March, 1842, and wishes to make arrangements to pay it. He was no original party to the contract, but since its inception, by marrying one of the parties, became liable under it. It was to him, and not to his wife, or to any other person, that the promise of indulgence was given. All the original parties to the obligation remained in *statu quo.* There was no promise to indulge them. But *Dahlgreen* offered to secure the debt by a valuable collateral security—a mortgage on one hundred and forty slaves, if the indulgence were granted. It was not received or taken by *Roberts;* there was merely an understanding, based on no consideration whatever, that he, *Dahlgreen,* should have six years within which to pay the debt. The case is fully covered by the decisions before quoted, and the sureties, if being bound *in solido,* they can be called such, were not released Besides, any contract with *Dahlgreen* to extend the time as to him, who was not an original party, could not have that effect.

Defendants have offered in evidence, the statute of limitations of Mississippi, as to claims against estates. He has not plead that the claim was either barred or extinguished. If the statute is to be considered simply as one of limitations, it will not govern the case, but the *lex fori.* The decision in *Harrison* v. *Stacy,* 6 R. R. 15, is palpably wrong, and has been disregarded by the Circuit Court of the United States, in *Nicholson* v. *Marders.* If the statute is relied upon as operating an extinction or release of the debt, it should have been specially pleaded; and not being so pleaded, cannot be noticed. See authorities before quoted.

But the obligation sued on or not declared as sued on, as a claim against the estate of *Ellis.* True, it is stated that the note was given for a debt of the estate of *Ellis;* but the estate is not sought to be made liable; neither is *Mary M. Ellis,* as administratrix. But it is alleged, that by signing it, she became personally liable to pay it, and the suit is brought against her individually. That she was so liable, see the following authorities: 2 Howard's Miss. Rep. 851. 3 Ib. 176. 6 Ib. 371. 1 S. and M Miss. Rep. 666. 3 Ib. 425. The statute could not, of course, apply as to individual liability.

*Benjamin* and *Micou, H. B. Shaw* and *S. R. Walker,* for defendants. In *Lacoste* v. *Benton,* 3 Ann. 220, the court decides that, prescriptin of ten years only can be invoked, on a similar instrument. This decision is based upon that of *Bank of United States* v. *Donally,* 8 Peters 373, but we think the cases are distinguishable.

The Viaginia statute relied on in 8 Peters, applied to all obligations for the payment of money, other than specialities, or sealed instruments. It is clear that the instrument in question was not a sealed instrument, and the law of Kentucky giving it the effect of a sealed instrument, did not make it one. The case was therefore properly decided. It was a decision on the law of limitation wholly, and the *lex fori,* according to the admitted principle, governed. The instrument was not within the description of the law for the longer term of limitation, and therefore fell under the short term.

But, in this case, we think the instrument sued on is within the description of art. 3505. Not only notes and bills to order, but all effects, that is, obligations negotiable, or transferable by endorsement or delivery are embraced.

It is obvious that there is a preliminary question, before the law of prescription arises. You must first ascertain the nature of the instrument, its character, &c., before you can determine what prescription applies. The nature of the instrument, and the obligations it imposes on the maker, are questions not necessarily governed by the *lex fori*. After the instrument has been classed, then the prescription is applied according to the law of the former.

The first question then, is: Is the note sued on, an obligation transferable by endorsement or delivery, in Louisiana? .

It is made so by statute of Mississippi, where the contract took place. The statute of 1822 declares, that all obligations for money, whether payable to order or not, may be assigned by endorsement, and that the assignee may sue in his own name. Hutchinson's Dig. 640.

The note in question is made under that law, and the question arises, whether its negotiability or assignability is not inherent in the contract, so as to make it equally assignable everywhere else. In other words, whether the quality of negotiability is not a part of the contract? If I promise to pay $100 to A, and the law gives to A power to assign the obligation, by endorsement, do I not promise to pay to A or his assignee?

The precise question is put by Judge Story, but he does not treat it as one settled by authority. He evidently inclines to the opinion, that the negotiability is inherent in the contract. "It may be truly said," says this writer, "that the transfer is entirely in conformity with the intent of the parties, and to the law of the original contract." Story on Bills, § 174.

The reverse of the proposition, that an endorsement in blank, which does not, by the law of France, transfer the property in the note, will not be held in England to transfer it, has been held in England. *Trimbey* v. *Vignier*, 1 Bing. New Cases, 159, (27 Eng. Com. Law Lib.) and the decision is quoted and approved by Judge Story, because the right of action relates "not to the form of the remedy, but to the interpretation and obligation of the contract." Story's Conflict, § 316, a. And to the same point in § 253, a.

The code declares that any debt is assignable, and on any credit whatever the assignee may sue in his own name. The transfer is complete between the parties by the giving of the title. Code, 2612. What is the title referred to seems ambiguous. If the obligation is in writing, the delivery of the obligation would satisfy the language of the law. If not in writing, then the written transfer may be regarded as the title. But the authors tell us that a credit, a debt, a *creance*, may be transferred, either by authentic act, *sous seing privé*, or verbally; the trasnfer is complete, by the simple consent as to the thing and the price. 16 Duranton, 492.

*Cession et transport* are synonymes, and the cession of credits is, in general, governed by the same rules that apply to the sale of corporeal objects. 2 Zachariæ, 551–2.

The transfer, *(transport,)* like all other sales, is perfect between the parties, by the mutual consent as to the object and the price. Troplong, *vente*, n. 880. The delivery is made "*par la remise du titre*," which is the mode pointed out for delivery of incorporeal rights; but this is not necessary to transfer the title, for this the mere consent or agreement is necessary. "*Ce resultat est déjà obtenu par le consentement.*" Code, 1583. Ib. 881.

So in the Dict. de Droit Come., title Transport, Cession, it is said that a debt, a share in a partnership, or any other incorporeal right, may be sold like any movable object. The title, *le titre*, must not however be mistaken for the debt, of which it is only the proof, and its delivery is not, in general, sufficient to transfer the property, so far as third persons are concerned, "*á l'égard des tiers.*" It is therefore sufficient so far as the parties are concerned.

The same book teaches, that the above is the general rule, applicable where the law has not provided some other mode of transfer. Now, as to bills of exchange, by the *Code du comm.*, a. 137–8, they pass by special endorsement, but not by general endorsement; this will account for the case cited in Story's Conflict, § 316, a. (above.) As to these instruments there is a special law, and the mere endorsement of the name of the payee does not import a transfer. But in the absence of any special law, the general principles laid down in the code apply, 1st. Not only corporeal objects, but incorporeal, such as a debt, an

inheritance, a servitude, or other rights, may be sold, a. 2424. 2d. The transfer, as between the parties, is complete by the giving of the title; a. 2612.

We have not yet referred to the effect of the words negotiable and payable at, &c. Here, again, we are so unfortunate as to encounter the opinion of the court in *Young* v. *Crossgrove*, 4 Ann. 235.

It is well settled that no precise form of words is necessary to make an obligation negotiable. Any form, indicating the intention to give it a negotiable character, is sufficient. *United States* v. *White*, 2 Hill, 61. Chitty on Bills, 159, 195, (ed. 1842.) Story on Notes, 15, 44.

In the case of *Crossgrove*, the court reads "negotiable" and "payable" as synonymous; in other words, the word "negotiable" is expunged.

The word negotiable is sometimes used to convey an idea expressing something more than mere negotiability, to wit, negotiability without being open to equities and defences. The negotiability is merely and simply its transferable quality; that quality may remain whether the equities between the original parties be admitted or not. Thus, a note is negotiable after maturity, though if received after protest, it is open to defences. Story on Notes, § 180.

An endorsement, annexing a condition, does not affect the negotiability, but it gives notice of consideration and admits the equities. *Tappan* v. *Ely*, 11 Wend. 362.

The very rule of the law merchant, that the consideration may be inquired into unless the bill has passed, without notice for value, and in the ordinary course of trade, shows that the mere transferable nature of the bill, is only one of the elements constituting its security as an object of commerce. In all suits between the original parties, defences arising out of the consideration are heard, but the hearing of these defences does not impugn the character of the instrument. It may be negotiable, although never negotiated.

The question, whether a debt barred by limitation in the State where the contract was made, and where the parties resided, until the full term of limitation expired, can sustain an action in another State, to which the defendant may afterwards remove, may be regarded as an unsettled question. Judge Story expresses the opinion that the action cannot, in such case, be maintained. His opinion has been followed in Alabama; and Troplong considers a debt extinguished and at an end by the expiration of the term for prescription. 8 Porter's Rep. 1 Troplong, Prescription, n. 29. Story's Conflict. 4 Mason's Rep. &c.

That a difference exists, for many purposes, between the effect of limitation before and after the term has expired, is undeniable. Thus: prescription does not run against the United States, and yet if a debt, already prescribed, be transferred to the United States they cannot recover, because the right to the limitation was fully acquired. *United States* v. *Buford*, 3 Peters, 30. *United States* v. *White*, 2 Hill, 61. So, if a debt be barred, the acknowledgment of a partner or a debtor, *in solido*, will not revive it as to another partner or debtor. *Davis* v. *Houren*, 6 R. R. 256. Comstock's Rep. 523, &c.

It is also fully established, that a title made perfect by prescription in one country, is good everywhere else. *Shelby* v. *Gay*, 11 Wheat. 361. *Broh* v. *Jenkins*, 9 M. R. 557. Story's Conflict, 581.

The opinion of Judge Story, however, respecting the effect of limitation, has not generally been followed by the courts. The courts of Massachusetts decide the reverse, and the point is said to have arisen in *The Union Manufacturing Company* v. *Lobdell*. 7 N. S. 108, although it does not appear by the report of the case, that the precise question presented by Judge Story was considered. In the case of *Broh* v. *Jenkins*, 9 M. R., the question is noticed but not decided. It must therefore be admitted, that the opinion of Judge Story and of Troplong, are not sufficiently sustained by judicial decisions to be relied upon as authority.

There is, however, a proposition which is discussed by Judge Story, and in which he is fully supported by the courts; it is, that if by the terms of the statute *loci contractus*, the debt is really extinguished; then, a debt extinguished by the statute, is extinguished everywhere. This proposition received the assent of the English judges in *Hulen* v. *Steiner*, 2 Bingham, N. C. 202, (29 Eng. Law Lib.) and in our late Supreme Court in *Harrison* v. *Stacy*, 6 R. R. 16. The counsel for appellant say this decision was palpably wrong, and was disregarded by the Circuit Court of the United States in *Nicholson* v. *Marders*. He has not favored us with a reference to the report of this decision, and we have been unable to find it. We believe, however, that the proposition, so far from being wrong, is clearly correct.

Now, what is the difference between the two opinions of Judge Story, to which we have referred? It seems to be this: the first opinion cited is, in substance, that of Troplong, that the law of limitation of itself extinguishes the debt; the second is, that if the debt be admitted to be extinguished where contracted, it must be held to be extinguished everywhere else.

In the common law authorities a judgment is always said to be conclusive until reversed; hence the possibility of reversal does not prevent its being held conclusive. See several cases cited in 2 Supt. U. S. D. 230, Nos. 281 and 299. *Warburton* v. *King*, 1 McLean, 460. 3 Peters, 203. So Kent speaks of a judgment pronounced, and carried into effect, as conclusive." 2 Kent, 120; and the courts in Mississippi give to the judgment of any competent court the presumption of correctness. 1 Howard, Miss. Rep. 163. 2 U. S. D. 644, n. 144, 145, 146. No. 151, p. 649, n. 259, 261, 266.

*Judgment against principal conclusive as to the default against the sureties.* Ib. 650, n. 270.

By the court:

Eustis, C. J.* This appeal is taken by the plaintiffs, who are trustees of the late Bank of the United States, from a judgment rendered against them in favor of the defendant, *John Routh*, in the court of the Tenth District, sitting in the Parish of Tensas.

The suit was brought for a large balance, alleged to be due by *Routh* and others, on a written obligation to pay to the President, Directors and Company of the Planter's Bank of Mississippi, the sum of $63,945, on the first of March after date, &c. The instrument was signed by all the parties, and bears date, Natchez, June 27th, 1839, and is there payable.

The objections taken by the counsel, for the defendant and appellee, against the right of action on the part of the plaintiffs, under the assignment of the obligation sued, we think untenable.

The judgment rendered in the court of chancery, in the State of Mississippi, on the demurrer of the defendants, *Dahlgreen* and wife, which is pleaded by the defendant, *Routh*, as *res judicata* in the present suit, we are of opinion, is no bar to the plaintiffs' action; because, beside other reasons, the case in which said judgment was rendered, is now pending on an appeal taken from said judgment, by the plaintiffs.

The argument of the counsel for the defendant, has been directed to the discharge, under the statute of limitations of Mississippi, which is alleged to limit the right of action, on instruments of this kind, to the term of six years. It is said, that the action was barred, by lapse of time, against the principals contracting the obligation, and that no action can be maintained on it, against the defendant and appellee, who was a mere surety.

Under our laws, an instrument of this kind would be prescribed, by the lapse of ten years from its maturity, and this prescription is applied to contracts made out of the State, when sought to be enforced in our courts. *Benton* v. *Lacoste*, 3 Ann. 220. *Young* v. *Crossgrove*, 4 Ann. 234. *Graves* v. *Routh*, *Ib.* 127.

We have considered the objections made by counsel, to the character of the obligation sued on, in reference to our law of prescription. Most of them were presented on the argument of the cases of *Lacoste* v. *Benton*, and of *Young* v. *Crossgrove*, and we are confirmed in our original impression, of the correctness of the doctrine there established.

It seems to be conceded, that *Routh* bound himself as a surety only, the note having been given for the benefit of the succession of *Ellis*, with which *Routh* had no connection.

*Judgment, in this case, delivered on the 26th of April—decree rendered on the 9th of November.

Although the judgment rendered in the court of chancery alluded to, is not technically *res judicata* between the parties, it is referred to by the counsel for the defendant, as a correct exposition of the effect of the statute of limitations of Mississippi, upon the obligations of the parties to the instrument sued on. It decides, in so many words, that the several payments made are not sufficient to prevent the operation of the statute, and that the plaintiffs' claims are barred thereby. The demurrer of the defendants is accordingly sustained, and the plaintiffs' bill dismissed.

But the counsel has failed to show that, by the law of Mississippi, all right of action against the defendant was extinguished, by the action of the plaintiffs on the note having been barred by the statute of limitations of that State, supposing the decision of the court appealed from to be a correct exposition of the law; and, as we are advised, such would not be the effect of the decision, supposing it to be final. Angell on Limitations, § 22. *Cone* v. *Colburn*, 7 New Hampshire Reports, 368. *Kerr* v. *Branden*, 2 Howard, 910. *Johnson* v. *The Planter's Bank*, 4 Smedes and Marshall's Report, 165. *Cohen* v. *Commissioners of Sinking Fund*, 7 *Ib.* 437. It must be borne in mind that *Routh* was not a party to the suit in chancery, he not having been served with process; the suit was against the principal debtors alone.

Nor is the advantage to the defendants cause perceived, in the establishment of the legal proposition, that the claim against the defendant must be governed by the statute of limitations of Mississippi, since the fact of the residence of *Routh*, in Louisiana, is not contested, nor is there any thing in the evidence which would subject the claim against him to the operation of that statute. Hutchinson's Miss. Code, p. 827, § 12. The claim of the plaintiffs is, therefore, unimpaired, either by the judgment rendered in the court of chancery of Mississippi, in favor of the principal debtors, or by the statute of limitations of Mississippi.

As the question has been argued before us, as to the applicability of the laws of this State, and of Mississippi, to the right of the plaintiffs to recover, by reason of the lapse of time, we take occasion to state, that we think it settled, by the highest authority, that the prescription of the forum or place where the remedy is sought, must govern in all suits for the recovery of debts. It was so determined in this State, after full argument, in the case of the *Union Insurance Co.* v. *Lobdell*, 11 Martin, N. S. 108. Such has been the established rule in the United States, and in the courts of Westminster Hall. 3 Johnson's Rep. 267, *Ruggles* v. *Keeler*. 3 Johnson's C. C. 218, *Decouche* v. *Savetier*. *Williams* v. *Jones*, 13 East. Rep. 439. 4 Cowan Rep. 530, *Andrews* v. *Heriot*, and cases there cited. 2 Mass. 84, *Pearsall* v. *Devignt*. *McElmore* v. *Cohen*, 13 Peters' Rep. 327, and numerous other more recent decisions.

It is sufficient to cite, among the civilians, Huberus, Merlin, Boullenois, and Voët, to the same effect. Huberus' Jurispr. Univers. lib. 3, ch. 2, § 34. Merlin Rep. *Verbo* Prescription, sec. 1, § III, No. VII. Voët, Commentary on the Pandects, lib. 44, tit. 3, No. 12. Merlin, Questions *de droit*, *Verbo* Prescription. It is not only thus settled by authority, but expressly provided in the Code of Practice, art. 13.

We do not consider that this rule conflicts with the well recognized doctrine, that a title to movable property, complete in the party, acquired by prescription, resulting from possession or otherwise, will enable him to recover the same, in a State other than that in which the right of ownership has been acquired. *Shelby* v. *Guy*, 11 Wheaton, 373. *Frierson* v. *Erwin*, 5 Ann. 530.

It is further contended, that *Routh*, the defendant, is released from all responsibility as a surety, in consequence of time having been given by the plaintiffs to the principal debtors. It appears that this note originally belonged to the Planter's Bank of Mississippi, and was given by *Mrs. Ellis*, for a debt due by the succession of her husband. She afterwards married *Dahlgreen*, who, under the laws of Mississippi, became responsible for the debts of his wife, by the fact of his marriage. The Bank of the United States being a large creditor of the Planter's Bank, agreed to receive the amount of the indebtedness in bills receivable and notes owned by the latter. This note was among the number. Before it was taken by the plaintiffs, representing the Bank of the United States, *Dahlgreen* addressed a letter to their agent, in which he stated his wish to make arrangements for the payment of the note. He offered as security, a mortgage on one hundred and forty slaves. He states, "I think the time ought not to be less than six annual installments. When I return to town I will see you again, as it will require some time to complete the arrangements." The agent declined receiving the mortgage proposed by *Dahlgreen*, considering the note, as it then stood, made the debt more secure than it would be by changing it, and recinding the mortgage, but acceded to the proposition for the terms of payment. *Dahlgreen* made three payments; the last was in February, 1843, but none since, though repeatedly applied to. It appears, also, that in the agreement under which this note, with others, was received by the plaintiffs from the Planters' Bank, it was stipulated, "that an extension of the time was to be granted to the parties to the paper transferred, of one to three years, from January, 1842, in equal annual payment, provided the security offered should be ample."

There does not appear to be any other fact, which it is material to notice, which relates to the granting of time.

Does this granting of time operate a release of the surety from his suretyship, he having given no consent to any extension of the time of payment?

By our laws, the prolongation of the term granted to the principal debtor, without the consent of the surety, operates a discharge of the latter. Code, 3032. The civil law was otherwise, and the principle has been preserved in the article 2039 of the Napoleon Code, which provides, that the extension of the term of payment granted by the creditor, does not release the surety, who may, in such a case, himself sue the debtor, in order to compel him to make payment. Pothier on Obligations, No. —.

As the note sued on was made in the State of Mississippi, and is payable there, the obligations created by it must be tested by the laws of that State; and whatever acts of the parties which operate an extinguishment of the contract there, will undoubtedly prevent a recovery elsewhere. The act, from which it is said this discharge of the surety results, was done there, and in relation to persons there present. As to the effect of this act upon the right of the parties to the contract, those laws are alone to be considered.

As far as we are able to collect the rule of law on this subject, from the jurisprudence of that State, it seems to be uniformly settled, that there must be a positive and binding agreement, with the principal, for a definite time, based upon a valuable consideration, sufficient to tie up and restrain the creditor during the time for which the indulgence is given, or it will not discharge the surety. And the agreement for delay, which will discharge the surety, must be founded upon a sufficient consideration, and be such as can be enforced in a court of

justice. *Payne* v. *Commercial Bank of Natchez*, 6 Smede and Marshall's Reports, p. 24. *Newell* v. *Hamor*, 4 Howard's (Miss.) Rep. 684. *Wade* v. *Stanton*, 5 Howard, 631. *Wellington* v. *Gary*, 7 Smede and Marshall's Rep. 533.

In a case where the principal debtor urged the creditor not to sue, promising that, if he did not, he would pay the debt in a given time, and the holder did not sue, the surety was not held to be discharged. Nor will the mere voluntary promise to forbear, on a renewed assurance that the party will pay that which he is already bound to pay, where there is no other new consideration, discharge the surety. *Montgomery* v. *Dillingham*, 3 Smede and Marshall's Rep 647.

There are several other cases referred to, in the brief of the counsel for the plaintiffs, to the same effect, which afford to us an established rule, which it only remains to apply to the facts of this case.

Some explanation must be given of the law of Mississippi, relating to the subject of the consideration of agreement, which we assume to be in accordance with the elementary writers of the common law.

All contracts are, by the laws of England, distinguished into agreements by specialty, that is, under seal, and agreements by parol. If the agreement is merely written, and not a specialty, the consideration must be proved. To make a contract or agreement obligatory, the consideration must be either a benefit to the party promising, or some trouble or prejudice to the party to whom the promise is made; otherwise the contract or agreement is considered as *nudum pactum*, and cannot be enforced.

It seems to us obvious, that there was no sufficient consideration, in this sense, in the consent of the plaintiffs' agent to give *Dahlgreen* time for the payment of this debt, and that, there being no consideration proved, the plaintiffs were not prevented from enforcing the payment of the note immediately, by any thing that passed between their agent and *Dahlgreen*.

Since the preparation of this opinion, a decree of the Court of Errors and Appeals of Mississippi, has been submitted to us, which affirms that of the vice chancellor, in the case mentioned in this opinion; but, under the view we have taken of the effect of such a decree on the rights of the appellee, it operates no change in the conclusions to which we have arrived.

In conclusion, we consider that there is no sufficient defence to the plaintiffs action, and that they are entitled to judgment.

For the reason assigned in the written opinion of the court, read on the 26th of April last, and on file, It is ordered, adjudged and decreed, that the judgment of the district court be reversed; and it is further ordered and decreed, that the plaintiffs recover from the defendant, *John Routh*, the sum of $47,185 24, with eight per cent interest thereon, till paid, since the thirty-first day of January 1843, and the costs in both courts.

PRESTON, J., dissenting. This suit was instituted on the 27th of December, 1849, against *John Routh*, residing in the State of Louisiana, on the following instrument assigned to the plaintiffs:

"$63,945. Natchez, January 27th, 1839. On the first of March after date, we, or either of us, promise to pay the President, Directors and Company of the Planters' Bank of the State of Mississippi, for value received, sixty-three thousand nine hundred and forty-five dollars, payable and negotiable at the Planters' Bank of the State of Mississippi, at Natchez. MARY M. ELLIS, Adm'x. of *J. G. Ellis*, deceased; JOHN ROUTH; ELIAS OGDEN."

There are credits on the note. The last is endorsed the 25th of February, 1843. It is not pretended that there is any later acknowledgement of the defendant's liability. There was suit instituted in the State of Mississippi, against parties to the note, in January, 1849. So that, neither suit nor acknowledgement interrupted the prescription of five years, which is plead under article 3505 of our code against the present action upon the note.

The note was given by the Administratrix of an estate, and it is supposed that *Routh*, the present defendant, is only a surety on the note. A suit in equity was instituted in the State of Mississippi, against the estate, in January, 1849, and it was decided by the chancellor that a recovery was barred by the statute of limitations. An appeal was taken, which remains undecided. This court having equitable powers, I do not think that judgment should be rendered in this case against the defendant, until the suit in the State of Mississippi is decided. Otherwise, it might be decided that the obligation is extinguished as to the principal, but in full force against the surety; for the statute of limitations of the State of Mississippi, like prescription under our code, extinguishes the legal obligation of a contract. This would conflict with our principles and laws, providing that the suretyship cannot exceed what may be due by the debtor, nor be contracted under more onerous conditions, and that the surety may require the creditor to discuss the property of the principal obligor. Civil Code, art. 3006, 3014.

I am, moreover, of opinion, that the note sued upon is prescribed by art. 3505 of the Civil Code. It prescribes, "Actions on bills of exchange, notes payable to order, or bearer, except bank notes, those, on all effects negotiable, or transferable by endorsement or delivery, are prescribed by five years, reckoning from the day when these engagements were payable." The action on the note is therefore prescribed, if it be a negotiable instrument.

An instrument is negotiable which can be transferred by an endorsement on the back, so as to enable the assignee to sue for its contents in his own name. It should, further, not be subject to the equitable assets of the obligor, a qualification, which will be noticed as to the note in controversy. A statute of the State of Mississippi prescribes, that "All bonds, obligations, bills, single promisory notes, and all other writings for the payment of money, or any other things, shall and may be assigned by endorsement, whether the same be made payable to order, or assigns of the obligee, or payee, or not; and the assignee, or endorsee, shall and may sue in his own name, and maintain any action which the obligee, or payee might or could have sued or maintained thereon, previous to assignment."

The note was thus made negotiable by statute, in the State where it was executed. It is said it was still not negotiable, because the obligor could plead any offset against the payee. He could, under this statute, to the time of assignment, but not afterwards.

It was held by the High Court of Errors and Appeals of the State of Mississippi, in the case of *Oldham* v. *Ledbetter*, 1 How. Rep. 46, that by this statute, "promisory notes may be assigned by endorsement, though the same be not made payable to order; and by the principles of the common law, they are transferable by bare delivery. In either case there has operated a complete divestment of all rights to the contents of the note, and of all authority to control their appropriation on the part of the payer. In one case, the assignee is clothed with authority to sue in his own name; in the other, the transferee is empowered to use the name of the payee to consummate his equitable interest by a collec-

tion of the money. The service of garnishment will not after transfer, though without notice, subject the debt due, by the maker, to the demand of the attacking creditor; for, as by assignment or delivery, the party into whose hands the note may come, is instanter vested with an absolute right to control its contents; the payer from that moment becomes the debtor of the holder, and responsable to him alone. The process of attachment cannot restore a relation which has ceased to exist, or appropriate rights of one individual to a discharge of the obligation of another. If this position should require aid from authority, a decision of the Supreme Court, Walker's Reports, 389, made in reference to the existing laws on this subject, will be found fully to sustain it." Under this decision, the negotiability of the note, after its assignment, was substantially established as to the maker, free of his subsequent equities, and I do not find it reversed. It can never lie in the mouth of the assignor or endorser, to say the instrument was not negotiable, because the payer might have equitable offsets against him before he assigned the instrument, and it was negotiable as to the holders, because it is not pretended by them that, in point of fact, there were any offsets against the note when it was negociated to them. They also have the guarantee of the jurisprudence settled by the decision quoted.

The defendant pleads the negotiability of the instrument against the bank that negotiated it, and assignees to whom it was negotiated. They cannot deny its negotiability; the first, because the statute and their acts made it negotiable, and the last, because, in point of fact, the instrument had every negotiable quality. Besides, for the very purpose of negotiating it, the parties made it negotiable in terms.

It is the intention of the parties to an instrument which renders it negotiable, if expressed in terms which may have that effect. And any terms expressing the intent, will render the bill or note negotiable. Chitty, 181. 1 Pard. 360-361.

It is laid down by elementary writers, that no form of words is absolutely necessary, to produce that effect. Making the instrument payable to order, is the usual form. But if the parties declare on its face that the instrument shall be negotiable, it should have that effect, as clearly as it can be implied, from the use of the word "order." Any words, from whence it can be inferred, that the person making the bill, or note, or any other party to it, intended to be negotiable, will give it a transferable quality against that person. Chitty, 219, ed. of 1836.

The bank required the defendants to give them a note " negotiable at the Planters' Bank of Mississippi, at Natchez," for their debt, and the debtor did so. This was undoubtedly intended to enable the bank to transfer it by endorsement, if she chose, so as to enable her assignees to sue in their own name; to do precisely what has been done. The instrument has been assigned, so as to enable the assignees to sue in their own name for the whole debt. That embraces every requisite to the definition of negotiability.

It is a principle of the interpretation of all instruments, to give every word in them effect, if possible. The term " negotiable," in the note under consideration, would have no meaning, if the note was not negotiable. But it can and has meaning and effect, because the note has been transferred by endorsement, and the endorsees have every right and power which belonged to the payees. That makes the negotiability of the instrument.

There has been but a single adverse decision, by this court, in the case of *Young* v. *Crossgrove*, 4 Ann. 234. It is a question of evidence, and of the

construction of an instrument of writing, not a question of law, and, therefore, I do not feel bound by the precedent.

The instrument, in my opinion, was, in Mississippi, by express statute, and is, in Louisiana, by its terms, negotiable, and the action on it is prescribed by our code, which prescribes actions on negotiable instruments, by the lapse of five years between their maturity and the commencement of a suit.

I think the judgment of the district court should be affirmed, with costs.

Application for a re-hearing refused.